Galaz v. Katona Good morning, and may it please the Court. Your Honors, I'm Clay Snell, and I'm here on behalf of Al Galaz. I'll focus really on two points. The Bankruptcy Court and District Court erred in this case really for two primary reasons. The District Court erred in concluding that the Bankruptcy Court had jurisdiction, or alternatively, that the Bankruptcy Court should not have abstained from exercising jurisdiction over a prior pending state court action. If the Court concludes there was jurisdiction, then the Bankruptcy Court clearly erred in granting summary judgment on grounds that were not urged by the appellee, nor that were even applicable to this case. In our brief, we spent a great deal of time on the issue of just subject matter jurisdiction and whether this Court's holding an in re national gypsum applied. I would like, during my argument, more to focus on a different jurisdictional ground, which I frankly think is easier for the Court to grasp, and that is the issue of mandatory abstention. Now, there are a few key points that the Court should keep in mind. Number one, this was a prior pending state court action in the Texas state court that was brought by Mr. Galaz 18 months after the bankruptcy case was closed, after Mrs. Katona's creditors were fully paid and after the case was officially closed. There was no plan in place, nothing to administer. This was a state court action that brought claims really that had nothing whatsoever to do with Bankruptcy Court. It was purely state law, causes of action, breach of fiduciary duty, and nobody has questioned the Texas state court's jurisdiction to hear those matters. That is not at all in dispute. Nevertheless, Mrs. Katona filed a declaratory judgment action after the state court action had been filed in which she sought a declaration that Mr. Galaz's claims were barred by discharge. The district court, when it dealt with the issue of mandatory abstention, really only devoted a small portion of its opinion and basically said that we didn't meet the third element, that this was a non-core matter, so it essentially dispatched the argument that the Bankruptcy Court should have exercised mandatory abstention. And what the district court reasoned was, because Mrs. Katona brought this declaratory judgment action in which she sought a declaration that the claim was discharged, it didn't matter what happened beyond that. The district court was allowed to hear all of the claims she made, even claims that were based purely on state law defenses, and the court didn't have to abstain. The problem with the district court's reasonings, Your Honor, is that just because the district court is not required to abstain on one claim doesn't mean it's not required to abstain over other claims. Why wasn't the analysis concerning the settlement agreement, which is basically what the Bankruptcy Court said, brought that core, since it was a settlement that arose in the bankruptcy? It affected the estate, arguably? Well, that's an excellent question, Your Honor. And Mr. Glaz was not a party to that settlement agreement. He's not bringing any claims from that settlement agreement. He's not suing to enforce that settlement agreement. His claims came from Marion Oshita, against whom he foreclosed in California. The California court held that he is entitled to foreclose upon that interest in WSG, and so he's bringing purely claims that he inherited when he foreclosed on Marion Oshita's. These are two non-parties, essentially, to the bankruptcy, Algalaz and Marion Oshita. But the Bankruptcy Court found the settlement agreement that was entered into during the bankruptcy was a release or had preclusive effect, prevented these new claims from going forward. So why isn't that interpreted? It hinged on the interpretation of the settlement agreement. I agree with you that the Bankruptcy Court never found that this was dischargeable under the discharge order. It was focused on the settlement agreement. But why isn't that core? Because it affected the administration of the estate. Well, the finding was clearly erroneous, because Mr. Galaz's claims do not depend whatsoever upon any order from the bankruptcy. He was not a party to the settlement agreement. His claims come from a California court that had — that nobody's questioning the jurisdiction of a California court to foreclose his interest on that — on Marion Oshita's interest in the company. So you're just telling me the Bankruptcy Court was wrong. Maybe it was. But whether it was right or wrong doesn't go to whether the general issue is core or not. So why is the nature of that issue not core, according to you? The nature of the issue is not core, because that case does not — this case does not turn on the interpretation of the order. Whether that claim — whether the release that the Bankruptcy Court relied upon released Lisa Katona in no way affects Al Galaz's claims. He's not suing under that. That was a release to which he was not even a party. His only claims come from what he got out of the California court. It had nothing whatsoever to do with the bankruptcy. Mr. Galaz was not a party to that agreement. The order didn't directly affect him. He was a party to an adversary proceeding in that bankruptcy, a separate adversary proceeding, but not that particular order that Ms. Katona relies upon. Now with regard to abstention, the — and this came up in a case that this court heard out of this same bankruptcy, the In re Galaz, that you can have some core claims and non-core claims. And just because you have both doesn't mean the Bankruptcy Court can exercise jurisdiction over the whole thing. That's what the holding of In re Galaz was, was that the state law claims the court didn't have core jurisdiction and could only issue proposed findings of fact and conclusions of law. Well, it's the same thing with regard to abstention. Perhaps the Bankruptcy Court was not required to abstain with regard to the issue of discharge and arguably the issue of the settlement agreement, but at the very least it was required to abstain on these other state law defenses like statute of limitations and things like that. We cited some cases for the proposition that you can extend that reasoning to abstention. There was two lower court cases. In doing some research, I found additional authorities out of — actually, the Third Circuit Court of Appeals agrees that in looking at abstention, you have to look at each claim separately. Just because the Bankruptcy Court is not required to abstain on one claim doesn't mean it's not required to abstain on other claims. In the cases In re Exide out of the Third Circuit Court of Appeals, 544 F. 3rd 196, there the Third Circuit held each state court claim removed to Bankruptcy Court must be by virtue of being pursued in the same litigation as core claims. So at best, the Bankruptcy Court had jurisdiction to entertain the issue of discharge. We believe that it should have abstained on everything else because they really had nothing to do with the bankruptcy. Ms. Katona really doesn't take issue with our abstention argument other than claiming that we didn't meet the non-core requirement. She also claims that there was no evidence on the sixth element of mandatory abstention that the state court action can be timely adjudicated. Well, in that very same paragraph in her brief, she concedes that, yes, it can because she even cites statistics which show that both the Bankruptcy Court and the Texas State Court are equally efficient at disposing of claims. If the court is not convinced that mandatory abstention or jurisdiction doesn't apply, then at the very least, the doctrine of permissive abstention should apply. And I won't go through each and every one of those elements, but I would like to talk several of them. Factor number one, which was the effect or lack thereof on the administration of the estate. This estate had been closed for over a year and a half. It's been fully administered. Whether Mr. Golas prevails on this claim will have absolutely no impact on any of Ms. Katona's creditors. Factor two, the extent to which state law predominates over bankruptcy law. This is really about a company, a worldwide subsidies group. The claims are breach of fiduciary duty, purely state law claims. The only exception would be the issue of discharge. What authority do you have that says we can even review the question of permissive abstention? Section 1334D says any decision to abstain or not abstain made under the permissive statute is not reviewable by appeal. And Your Honor, I'm sorry I overlooked that and I'll address that in supplemental briefing if I may. That's about all I have to say. In any event, even if there was jurisdiction or if the court was not required to abstain, then clearly it erred on the ruling on the merits. As I mentioned, the bankruptcy court, first of all, it granted summary judgment on two grounds that are raised nowhere in Ms. Katona's motion for summary judgment. That is the issue of release or accord in satisfaction and then on the defense of judicial estoppel, which was not raised. We've gotten into in our brief and the problems with doing that, but let me actually get to the merits of those claims. The bankruptcy court reasoned that Mr. Glaz's predecessor and interest on a separate issue was a party to that release and made statements in court that Marion Oshita didn't hold an interest in this company Worldwide Subsidies Group. There was no evidence whatsoever that Marion Oshita were parties to any type of settlement agreement. They were not. They never released any claims. Those defenses would only apply if they applied really to Marion Oshita. Mr. Glaz is stepping into the shoes of Marion Oshita in bringing these claims against Lisa Katona. So whether Denise Vernon released claims or whether Denise Vernon took inconsistent positions has nothing whatsoever to do with Mr. Glaz's claims because he's in the shoes of Marion Oshita. He got those from a California court, as I said. Nobody's questioning the jurisdiction of that court. These are purely claims he obtained from Marion Oshita. There was no argument or even suggestion that Oshita would be estopped or that she ever released these claims. It's really like this would be. I know it gets kind of confusing because you have a lot of different claims that get assigned, but it's really no different than if this were a promissory note, if Ms. Katona had executed a promissory note in favor of Marion Oshita. Whether there were releases by Denise Vernon along the way really don't matter. The fact of the matter is if Mr. Glaz went to California, foreclosed the judgment, and became the holder of that promissory note, he would absolutely be entitled to enforce it. The settlement agreement didn't deal with a promissory note. There's no judicial estoppel that would have applied to that promissory note. So it's really no different than if Mr. Glaz were seeking to enforce a promissory note. Back to the primary issue of jurisdiction, we believe that really the bankruptcy court has extended this court's holding in National Gibson far beyond what I think this court ever envisioned. I have not been able to find a case where you're this far removed from the bankruptcy. You're a year and a half after the bankruptcy is closed. It's a state court action that really has nothing to do with the bankruptcy court, even though the parties are arguing that it does. I think this court should be guided by its later decision in Enright-Craig stores that on post-confirmation, there's no jurisdiction except for claims relating to the implementation of the plan. Well, this doesn't affect the implementation of the plan. Nobody's challenging. Mr. Glaz is not seeking to enforce rights under the plan. He's not questioning the terms of the plan. Since the bankruptcy court never reached the issue of discharge and couldn't reach the issue of discharge, this is a tremendous, overly broad extension of National Gibson. I will go ahead and reserve the balance of my time unless the panel has any questions. When are these people going to stop suing each other? Well, it's only been ten years. Well, it has, and this is a different party. This is Mr. Alfred Glaz. I mean, he has a chosen action. He has a claim that he paid valuable money for, and so really the history of the Glaz and Katona litigation really should have no bearing. I mean, this is one particular claim, and even though Ms. Katona's counsel repeatedly brings up issues of Mr. Glaz's son and other issues in litigation, those should have no bearing on this case. We have two cases on our docket dealing with now where the briefing hasn't been completed. What would make you all go away? I mean, have you ever been referred for professional settlement counseling? Your Honor, the parties have engaged in settlement discussions, yes. They have not come to fruition. How recently? Within the last two or three months. Informal discussions among counsel, Your Honor. Would it help to a great deal, obviously, of bad blood between the parties, and perhaps, but I really don't know, Your Honor. There is a great deal. Why don't you both discuss it with your clients and let us know if we can refer it to the settlement counsel. Thank you, Your Honor. All right. Thank you. Good morning. May it please the Court, Royal League for Lisa Katona. The funds that Al Glaz says are the basis of his claims, the payments to Lisa Katona for which Al says Lisa didn't account, are the very funds that were the source of funding for her Chapter 13 plan, and Al Glaz was an active participant in her bankruptcy throughout the time. The bankruptcy court approved both the 2008 settlement, the first tranche, if you will, of funds on which Al bases the claim. What are the funds? Are those the monthly payments or the ---- The 2008 settlement, Your Honor, is the approximately $185,000 that became the monthly payments that were the source of her plan payments from 2008 until the fall of 2011 when there was the second settlement in which Mr. Glaz's daughter, Denise Vernon, used company funds, WSG funds, to purchase Lisa's interest in WSG. Those funds went to the Chapter 13 trustee and completed the payments of her plan. What's the total value of this claim? It ---- I'm going to estimate, Judge. We never got that far in discovery. But I think it's approximately $350,000 to $500,000, which is in the range within an order of magnitude of the judgment against Raul Glaz, and I suggest to you, Judge, that this ---- the point of this case is to create the leverage for Raul Glaz to make the other pending case go away. Both Al Glaz ---- let's start with Al Glaz. Al Glaz was an active participant in the bankruptcy through the Segundo adversary with experienced bankruptcy counsel throughout the course of the settlement. Got notice but made no objection to the 2008 settlement. Got notice and made no objection to the 2011 settlement. Mary Ann Oshita clearly had actual notice of Lisa's bankruptcy in 2011 before the bankruptcy court approved the second settlement and before Lisa received her discharge. We know that because Mary Ann Oshita herself personally appeared telephonically in a hearing, was on the phone with Judge King in October, November 2011, before the bankruptcy ---- The telephone conference is not a personal appearance. I'm not saying she appeared. I'm saying she had personal ---- I'm sorry. She had personal knowledge of the bankruptcy. It appears that she had personal knowledge of the bankruptcy going back as early as 2008. Attached is an exhibit to Ms. Katona's motion for summary judgment, is a letter from Ms. Oshita's counsel in 2008 confirming Oshita's knowledge of the finances, the income, that WSG and Lisa Katona were receiving. I suggest to you the only place she could get that would be looking at the online records in Pacer to see what was happening in Lisa's bankruptcy. This Court said in Compton, the Ninth Circuit has said in Gregory, when a creditor, a claimant, has actual knowledge of a debtor's bankruptcy, actually knows in time to do something about it and protect her position, protect his position, it's incumbent on the creditor to do that. In this case, both Denise Vernon, all three, Denise Vernon, Algalaz, Mary and Oshita, all of them could have objected to Lisa's receipt of these payments, the payments that became the very ---- were, they didn't become, they were the source of her Chapter 13 plan, which means these payments were the source of her discharge and her fresh start. Everyone involved here, it might be a different case if this was a creditor who didn't know about the bankruptcy. It might be a different case if these were funds that weren't the source of her fresh start. But this is the source of her fresh start, and there's no policy reason why this creditor, an active participant in her bankruptcy for years, should be able to pull back the fresh start from her after he participated throughout the bankruptcy and watch these settlements be approved without objection and watch these payments be made to Lisa. The bankruptcy court, the district court, did not err in not abstaining. This was a court proceeding. Both Denise Vernon and Algalaz because it's about the approval, the bankruptcy court's approval of two settlements, and because the events that happened, happened inside the bankruptcy court during the administration of her bankruptcy. Now, Algalaz ---- It's been eight years. I mean, how long does the jurisdiction last from the 2008 settlement? Does it go on forever? It goes on, Your Honor, as long as is necessary to protect the implementation of the plan. If this were about events that happened after the plan, if it were events about events that happened after the discharge, no, there wouldn't be jurisdiction for that. But this is about events that happened beginning, Algalaz says in the petition for his State court case, he says these payments began in 2007 before Lisa filed her bankruptcy and then continued into 2008 and 2011 throughout the time of the administration of her estate. So how long does bankruptcy court jurisdiction continue? Well, it continues, Judge, as long as is necessary to effect the discharge. Post-discharge complaints typically come up. By definition, they have to come up post-discharge. And for Chapter 11, Chapter 13 debtors, they typically come up after the plan is approved and often after the plan is implemented. What matters is when did the events on which the claims are based occur. And as long as those events occur pre-petition as they did here and during the course of the bankruptcy, the bankruptcy jurisdiction continues. The bankruptcy court never dealt with the question of whether the discharge order applied here. I understand you're saying that still gives you jurisdiction because it's alleged and for jurisdiction you just look at whether a non-frivolous claim is alleged. But then deciding whether what the bankruptcy decided, actually decided was core or non-core, there do we need to look at this issue surrounding the settlement agreement? I think you do, Judge. I think this Court should look to the — this Court's — all of the appellate courts' well-settled rule that this Court can affirm on any basis in the record, any basis supported in the record. This Court could affirm on the basis of discharge. This Court could affirm on the basis of latches, which is, I think, just a step away from the discharge. This Court could affirm on the grounds that were stated in Ms. Katona's motion for summary judgment or the grounds the bankruptcy court relied on and the district court affirmed. I think if you look at the settlement agreement, Judge, and ask, could Denise Vernon have asserted these claims? The answer is clearly no. The settlement, the release, the scope of the release, couldn't be broader. It expressly says the most comprehensive release of matters relating to WSG allowed by law. The whole reason I suggest to you that Denise Vernon is not the plaintiff or claimant is because the law's litigation side knew, well, that would never get off the ground. Denise Vernon simply couldn't assert these claims. Algalaz says he stepped into the shoes of Mary and Oshita, but he stepped into two sets of shoes. He took the Oshita claims, true enough, but he got them through Denise Vernon. Denise Vernon inescapably is in his chain of title. And because she's in his chain of title, he takes these claims subject to the defenses that would apply against her. It doesn't matter that the defenses are based on state law. This court said in Morrison v. Western Builders that when the court considers a core proceeding relating to a debt, the court can decide as a part of that jurisdiction, the court can decide the very existence and the debt. It's a bankruptcy court, after all. The whole point of the bankruptcy court and bankruptcy jurisdiction is deciding the debts that are owed, that are not owed, and adjusting the payment of those debts. So there is core jurisdiction arising under, because under this Court's decision in Morrison v. Western Builders, the discharge issue is squarely before the lower courts, and it's now squarely before you. Finally, I would urge the court to consider Mr. Galoz's statement of issues, because for Mr. Galoz's complaints about the merits of the lower court's decision, they're simply not raised by his statement of issues filed in the district court in the initial appeal. And under this Court's decision, I think it's in Ray McCombs, those issues are waived. Thank you. All right. Thank you, sir. Briefly, Your Honors, Judge Costa, you raised the issue earlier of whether the interpretation of the settlement agreement confers jurisdiction as that core jurisdiction, and we'll respectfully disagree on that point, but even if it is, even if the bankruptcy court did have the jurisdiction to hear the issue of discharge and the interpretation of its order, that's the limit. It was required to abstain on the other claims. The claim is clearly not discharged. Oshita was not provided for in the Chapter 13 plan. The settlement agreement clearly does not apply. Neither Oshita nor Galoz were parties to that agreement. So what claims beyond saying the settlement agreement released these claims, what did the bankruptcy court decide that it shouldn't have? Well, it also decided the issue of judicial estoppel, my point being the bankruptcy court was wrong on those issues. It was not discharged. The settlement agreement does not bar the claim. The bankruptcy court should have ended its inquiry at that point and abstained from the rest of it and allowed Mr. Galoz to proceed in the state court action. Denise Vernon is not in the chain of title for Al Galoz's claims. If this were that promissory note, Denise Vernon never held that promissory note. Mary and Oshita had the promissory note. Al Galoz foreclosed on it. That's it. The claims he is asserting for WSG never were in the hands of Denise Vernon. The settlement agreement between Denise Vernon and Lisa Katona is completely immaterial. The fact that the bankruptcy court might have so-called approved the distributions of which Mr. Galoz is complaining, I would point out there's no evidence in the record of that, that each particular distribution to Lisa Katona was approved by the bankruptcy court. That's not in the record. Second, neither Al Galoz and more so Mary and Oshita were involved in that particular aspect of the case. At best, Al Galoz was a defendant in a separate adversary action, and Mary and Oshita was never a party. The extent of her appearance was a telephone call after the claims deadline in which the bankruptcy court reassured her that her appearance was not necessary and that her rights would not be affected. So for those reasons, we ask that if the court is convinced that there's jurisdiction, I would submit that at the very least, the bankruptcy court should have limited its rulings to the discharge issue and perhaps the settlement agreement issue. Those clearly do not bar the state law claims. It should have ruled that way and then abstained for the remainder of it. If you're convinced there's jurisdiction, well then clearly the court erred in granting summary judgment on these defenses. The issue was not waived. The whole point of the designation of issues is simply to give the other party notice of what you're going to be arguing so they can designate appropriate parts of the being more specific in our statement of issues prevented her from bringing materials before the court or that there's an incomplete record. So we respectfully request that the court overturn the district court's judgment in this matter. Let me ask you a question of curiosity. Is Ms. Oshita now or was she ever related by blood or marriage to any party in here? She was not, Your Honor. The only relationship, of course, other than being a business partner to Raul Galaz at some point, she was, I believe, his legal assistant before they became business partners. But no blood relation, Your Honor. Thank you. Let me ask counsel to consult with your clients, get some serious settlement authority and report in writing to the clerk of court within 10 days as to whether your clients are amenable to having the court settlement counsel deal with negotiations. All right? Thank you. Thank you, Your Honor. Thank you. Thank you. All right. We're going to take a short recess.